IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RONALD J. HAMILTON                                              PLAINTIFF

v.                          Civil No. 6:21-CV-06016-SOH-BAB

SUPERINTENDENT DeANGELO EARL,                            DEFENDANTS
DEPUTY WARDEN TODD BALL, and
SHIFT CAPTAIN BRYANT DALLAS
 (All of Arkansas Division of Correction
Ouachita River Unit)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 59).

### I. BACKGROUND

Plaintiff filed his Complaint on January 29, 2021.  (ECF No. 1).  On February 8, 2021, the Court entered an Order directing Plaintiff to file an Amended Complaint to address deficiencies in his original Complaint.  (ECF No. 6).  Plaintiff filed his Amended Complaint on February 22, 2021.  (ECF No. 7).  Plaintiff's Complaint centers on his incarceration in the Arkansas Division of Correction ("ADC"), Ouachita River Unit.  Plaintiff lists the date of occurrence for his claim as July 15, 2020, and names as Defendants DeAngelo Earl, Todd Bell, Maurice Culclager, and Bryant Dallas.  *Id*.  Plaintiff checked the section on the complaint form to indicate he proceeded against the Defendants in their personal capacity only.  *Id*.

1

With respect to each Defendant, Plaintiff states that his rights were violated when he was housed in an isolation area in hot temperature conditions starting on July 15, 2020.[1]  Plaintiff alleges that this caused him to suffer rashes, cramps, and possible nerve damage due to his kidney. (ECF No. 7).  Plaintiff attached several documents to his Amended Complaint, including final grievance appeal responses from grievances concerning the incident, dated 9/14/2020 (OR-20-00820), 9/21/2020 (OR-20-00874), 10/12/2020 (OR-20-00941), and 10/16/2020 (SNN20-00252). Plaintiff also provided a copy of the final appeal response for an earlier 2019 grievance, SNN19-00181. *Id.*

Grievance OR-20-00820 was initiated on July 19, 2020.  (ECF No. 7 at 14).  The final grievance appeal response, dated September 14, 2020, indicates that Plaintiff stated he was moved from SNU to West Isolation, and told multiple ADC staff that he should not be there because he is on hemodialysis and has other health issues.  He further asserted, because West Isolation was not a medical special needs unit, they could not attend to his medical needs, and he was not getting his medications.  (*Id.*).  The initial response from the Warden on July 27, 2020, stated there were no medical restrictions or scripts to keep him from being housed in Isolation.  (*Id.*).  He further stated he was housed in SNC for his prior disciplinary confinements for convenience because he is a dialysis patient.  Plaintiff was told that when bed space became available in SN-C, he would be moved there.  (*Id.*).  In his appeal, Plaintiff argued that the response in Grievance #SNN 19-00181 supported his argument that he should not have been taken from SNA-35 to West Isolation. (*Id.*).  The final appeal response stated the 2019 grievance did not support his argument, and notes that he had already been moved to SN-C at the time of the response.  The grievance was found to be without merit.  (*Id.*).

---

[1] Later documents in the summary judgment record indicate that Plaintiff was housed in West Isolation from July 15, 2020, until August 27, 2020.

Grievance OR-20-00874 was initiated on July 25, 2020. (ECF No. 7 at 28). Plaintiff stated he was still in West Isoaltion, and again referenced #SNN 19-00181 as evidence that he needed to be in SN-C due to his medical needs. The final grievance appeal response, dated September 21, 2020, indicates this grievance was a duplicate of his first grievance, was rejected as the unit level as such, and received the same response on the final appeal. (*Id.*).

Grievance OR-20-00941 was initiated on August 11, 2020. (ECF No. 7 at 29). The final grievance appeal response, dated October 12, 2020, indicates Plaintiff claimed he was only allowed to drink 1,000 milliliters of fluid between each dialysis treatment, and this amount was insufficient because he was "sweating out" more fluid than he was allowed to drink due to the high temperature. (*Id.*). He stated, as a result, he was suffering from muscle cramps in his sides, legs, and hands. He asked that he be moved to a "controlled temperature environment." (*Id.*). He stated a charge nurse told Captain Dallas that he needed to be moved for health reasons, but he was still in West Isolation. (*Id.*) The Warden responded on August 27, 2020. He stated that Dr. Daiel was contacted on August 14, 2020, and stated that Plaintiff would be better served in SN-C, but moving him there was not an emergency. (*Id.*). In his appeal, Plaintiff pointed out that Dr. Daniel stated it would be better for him to be in SN-C, and disputed the type of grievance filed. (*Id.*). The final appeal response noted he was in Isolation due to his actions, and had already been moved to SN-C. (*Id.*).

Grievance SNN20-00252 was initiated on August 23, 2020. (ECF No. 7 at 30). The final grievance appeal response, dated October 16, 2020, Plaintiff argued that he was being "retaliated on." (*Id.*). The grievance was found to be a duplicate, the unit level response repeated Dr. Daniels' opinion that it was not an emergency to move him, and the final response noted he had already been moved to SN-C. (*Id.*).

Plaintiff also provided a copy of the 2019 Grievance SNN19-00l81, which he referred to in several of his 2020 grievances as evidence that he should not have been placed in West Isolation. (ECF No. 7 at 26). In this grievance, Plaintiff stated he was kept in disciplinary confinement past his sentence date. (*Id*.). The unit level response stated, "[d]ue to your medical status, you were assigned to Extended Restrictive Housing in SN-C barracks instead of East or West Isolation." (*Id*.). The final appeal further elaborated,"[y]ou were assigned to the SN-C barracks instead of isolation due to your medical needs, which could be addressed easier in SN-C barracks." (*Id*.).

Plaintiff also attached a copy of a medical information handout entitled "Will dialysis affect my nerves (the feeling in my hands and feet)? Plaintiff highlighted a section which indicated that one way to keep his nerves healthy was to "Keep my skin clean and dry, and avoid very hot or cold temperatures." (ECF No. 7 at 24). Plaintiff also attached a sheet[2] which lists temperatures for July 2020, along with historic and average temperatures. (ECF No. 7 at 27). He notes the temperatures were in the low to mid-90's during his time in Isolation. (*Id*.).

Although Plaintiff did not indicate that he was making an official capacity claim, in the area on the complaint form entitled for doing so, Plaintiff states: "Administrative Directive #18-26 Punitive Housing/Restriction page #5-6 part (18) states 'The pre-placement health evaluation is to ensure the inmate dose (sic) not have any medical conditions contradictory to such placement (Exhibit A-1) Dialysis charge nurse pass out this information sheet to show that I should avoid hot temperatures (Exhibit A-2)." (ECF No. 7 at 9; 24).

Defendants filed their Motion for Summary Judgment on March 7, 2022. (ECF No. 59). Defendants argue:

> no medical personnel ever stated Hamilton's medical issues prevented him from being assigned to isolation or that an emergency existed requiring Plaintiff to be moved out of isolation. From the beginning of his isolation assignment on July 15,

---

[2] The source of this sheet is unclear from the attached exhibit.

4

> 2020, Hamilton was told that placement in SN-C—though convenient for his dialysis treatment—was not medically necessary and that he would be moved to SN-C as soon as a bed came open.

(ECF No. 60 at 1-2). They further argue they were entitled to rely upon a medical professional's opinion, and are therefore entitled to qualified immunity. (*Id*. at 6-7). Defendants emphasize an email from Dr. Daniel dated August 14, 2020. (ECF No. 59-4 at 3; 60 at 8-9). This email was generated in response to Jason Gray, Grievance Coordinator, who contacted Dr. Daniel after Plaintiff filed one of his grievances about being housed in Isolation. (ECF No. 59-4 at 1). In the email, Dr. Daniel states: "I do believe he [Plaintiff] would be better served in SNC b/c of dermatitis flare with the heat that could compromise his fistula. I do not believe this is an emergency move." (ECF No. 59-4 at 3). Finally, they argue Defendant Earl should be dismissed because his only involvement with the case was his role in reviewing and responding to certain grievances filed by Plaintiff. (*Id*. at 10-11).

Defendants attached two additional grievances as exhibits to their motion, OR-20-00973 and OR-20-00994. Grievance OR-20-00973 was initiated on August 14, 2020, and the final appeal response, dated October 8, 2020, indicates Plaintiff asserted both the dialysis manager (Fran) and the medical manager (McCoy) had emailed security the week of August 12, 2020, and told them that he needed to be moved from Isolation to SNC, but Deputy Warden Culclager and Captain Dallas ignored the email. (ECF No. 59-5 at 6). Plaintiff also emphasized that Dr. Daniel had stated that it would be better if he were moved to SN-C. (*Id*.). The unit level response said Deputy Warden Ball had spoken to both Mrs. McCoy and Mr. Giffin's office, and there was no reason he could not be housed in Isolation. (*Id*.). At the time of the final appeal response, Plaintiff had been moved to SN-C. (*Id*.).

5

Grievance OR-20-00994 was initiated on August 22, 2020, and the final appeal response, dated October 8, 2020. (ECF No. 59-6 at 6). Plaintiff claimed ADC policy requires him to have a pre-placement physical examination prior to being put in Isolation. He states he was placed in SN-A due to his health, but then moved to Isolation. He asserted the medical staff sent an email saying it would be better for his health to be in SN-C, but Warden Ball refused to follow policy and medical. (*Id*.). The responses repeated that Deputy Warden Ball had spoken to both Mrs. McCoy and Mr. Giffin's office, and there was no reason he could not be housed in Isolation. It again noted he had been moved by the time of the final appeal response. (*Id*.).

Defendants also provided a copy of Plaintiff's bed assignment history, attached to the Exhibit containing OR 20-00973. (ECF No. 59-5 at 6). This history indicates that Plaintiff was in housing area "C" on July 8, 2020. (*Id*.). He was placed in West Isolation on July 15, 2020, and then transferred to SN-C on August 27, 2020. (*Id*.). He was assigned to another bed in SN-C on September 2, 2020. (*Id*.). Plaintiff's prior five disciplinary confinements were served in SN-C. (*Id*.). He was in East Isolation for one day in September 2019 for an overcrowding adjustment. (*Id*.). He spent five days in West Isolation in July 2019 due to a custody change, and was then placed in SN-C for a disciplinary confinement. (*Id*.).

On March 7, 2022, the Court entered an Order directing Plaintiff to file a Response to the Summary Judgment Motion. (ECF No. 62). On March 14, 2022, the Court granted Plaintiff's Motion for Court Intervention concerning his ability to view his medical records. (ECF No. 63). Defendants were instructed to ensure that Plaintiff has reasonable access to view his medical record, in a timely manner, to prepare his case. (*Id*. at 2). The Court granted Plaintiff's Motion to Compel discovery in part, directing Defendant to produce a full copy of grievance SNN19-0081, produce requested emails "between individuals including dialysis personnel, medical personnel,

and medical provider ombudsman Charlotte Gardner, concerning Plaintiff, and his move to or from isolation." (*Id*. at 3).  Defendants were reminded that they must supplement their production with any medical records they received from contract medical providers after obtaining a HIPAA release from Plaintiff. (*Id*.).

On March 23, 2022, the Court entered an Order granting Plaintiff an extension until May 2, 2022, to file his Response. (ECF No. 66). Defendants were also ordered to ensure compliance with the requirements of the Courts Order granting Plaintiff's discovery requests by April 11, 2022. (*Id*.).

On April 25, 2022, Plaintiff filed a Motion for Sanctions, stating the medical records he has been permitted to view were incomplete, missing items such as medical "scripts," doctors' notes, diagnoses, chronic care visits, emails, and health incident encounters. (ECF No. 68). Plaintiff filed his Summary Judgment Response on May 2, 2022. (ECF No. 71). On May 6, 2022 — 4 days after Plaintiff's Summary Judgment Response was due, and almost a month after the Court had instructed Defendants to make Plaintiff's complete medical records available to him for review — Defendants filed their Response to Plaintiff's Motion for Sanctions. In their Response, they stated that Plaintiff's medical records were voluminous and not amenable to review in one sitting, ADC Health Services Administrator Crystal McCoy was compiling the records for 2022, and they would be available for Plaintiff to review "next week." (ECF No. 73). They also stated Grievance SNN19-00181 "was inadvertently left out of the documents sent to Plaintiff on March 23, 2022." (*Id*. at 2). On May 11, 2022, the Court entered an Order denying sanctions, but again instructed Defendants to ensure Plaintiff's ability to conduct a complete review of his medical jacket. (ECF No. 77). Defendants were instructed to ensure Plaintiff's ability to review his complete medical jacket by May 16, 2022. (*Id*.). Plaintiff was given until May 31, 2022, to

supplement his Summary Judgement Response. (*Id*.). Plaintiff filed his Supplement on May 31, 2022. (ECF No. 78).

In his Summary Judgment Response, Plaintiff asks the Court to deny the summary judgment motion because the Defendant had not provided "all evidence as directed by the Court." (ECF No. 71). Plaintiff attached a Declaration signed under penalty of perjury to this effect in support of his argument. (ECF No. 71 at 5). The Court notes that Plaintiff had filed an earlier Declaration in which three other inmates also provided signed declarations under penalty of perjury. (ECF No. 45). The three inmates, two of whom expressly identified themselves as kidney dialysis patients, stated that they had received disciplinary sentences but did not serve time in Isolation due to their status as kidney dialysis patients. Instead, they served their disciplinary sentences in the SN-C Unit. (*Id*.).

In his Response Supplement, Plaintiff disputes, among other things, that he had no medical restriction or "script" that kept him from being housed in Isolation. He argues that he had a medical "script" for "no exposure to excessive heat," and this "script" has still not been produced to him. (ECF No. 78). He argues that, as a dialysis patient, temperatures in the 90's with high humidity are excessive because he cannot consume the recommended amount of water for someone housed in these temperatures. (*Id*. at 2). Plaintiff attached an email dated August 12, 2020, from the Nurse Manager for Chardonnay Dialysis, in which she stated "Good morning! Inmate Hamilton ADC# 133523 informed nurse R. James that no dialysis patient belong in west isolation due to medical reasons. Inmate is requesting to be transferred to SNC. Just making you aware since it was brought to my attention." (*Id*. at 4). This email was sent to Jimmy Coleman and Bryant Dallas. It was copied to Crystal McCoy and Claudette Porter. (*Id*. at 4). Plaintiff points out that it was flagged for follow-up, but he did not receive any further emails in discovery. (*Id*. at 2). Plaintiff also

8

argues that he was not provided medical documentation as to the treatment of the rash he suffered as a result of the temperature in Isolation, and disputes that the treatment was adequate. (*Id*. at 2). Plaintiff provided printouts from the National Weather service indicating the maximum temperatures for July and August of 2020 were 95- and 94-degrees Fahrenheit. (*Id*. at 5).

Plaintiff's Motion to Voluntarily Dismiss Defendant Cuclager (ECF No. 70), was granted on September 1, 2022. (ECF No. 82). The case was reassigned to Chief United States District Judge Susan O. Hickey on January 4, 2023.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

#### A. Conditions of Confinement

Plaintiff alleges a conditions of confinement claim based on his medical status as a kidney dialysis patient and the lack of air conditioning in West Isolation in July and August of 2020. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir.1996). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.' ." *Whitnack v. Douglas County,* 16 F.3d 954, 957 (8th Cir. 1994) (*quoting, Wilson v. Seiter* 501 U.S. 29, (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834, (1970) (citations omitted); *see also Hudson v. McMillian,* 503 U.S. 1 (1992) (The objective component is "contextual and responsive to contemporary standards of decency.") (quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (citations omitted); *see also Brown v. Nix,* 33 F.3d 951, 954–55 (8th Cir. 1994).

Extreme cell temperatures can rise to the level of an Eighth Amendment violation, particularly if an inmate suffers from a medical condition or conditions making him vulnerable to temperature-related injury. *See e.g. Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (housing Angola, Louisiana prisoners "in very hot cells without sufficient access to heat-relief measures, while knowing that each suffers from [medical] conditions that render him extremely vulnerable to serious heat-related injury, violate[d] the Eighth Amendment"); *Berger v. Gibson*, 517CV00250BRWPSH, 2017 WL 11606604, at *2 (E.D. Ark. Nov. 16, 2017), *report and recommendation adopted*, 517CV00250BRWPSH, 2017 WL 11606605 (E.D. Ark. Nov. 27, 2017), *aff'd*, 17-3692, 2018 WL 11303593 (8th Cir. May 29, 2018) (The Eighth Amendment guarantees prisoners the right to adequate shelter and protection from extreme cold, and courts examine allegations of the severity of the cold and the length of time a prisoner is exposed to it.).

The following facts are undisputed. Plaintiff has kidney disease and requires dialysis. He was housed in West Isolation for a disciplinary charge from July 15, 2020, though August 27, 2020. West Isolation is not air-conditioned. The daytime outside temperatures for the time he was housed in West Isolation were largely between 90-degrees Fahrenheit and 95-degrees Fahrenheit.

The summary judgment record is completely devoid of Plaintiff's medical records or affidavits by medical staff concerning those records.[3] Also absent from the summary judgment record are any affidavits from Defendants themselves, or the ADC inmate classification staff referenced in Plaintiff's grievance responses.

Plaintiff has provided evidence that ADC policy requires inmates to undergo a pre-placement physical examination prior to being placed in Isolation. Plaintiff alleges in his verified Complaint that he received such an exam[4] and that the nurse gave him a medical handout indicating he should avoid hot temperatures at that exam. He submitted a medical handout, which the Court will infer is the handout he received at the pre-placement exam, into the summary judgment record. In Grievance OR-20-00994, supplied by Defendants, Plaintiff states he was placed in SN-A after his pre-placement exam but was then moved to West Isolation. He alleges in his verified Complaint that two nurses told Defendant Dallas the Plaintiff needed to be moved out of Isolation. An email from the dialysis charge nurse, dated August 12, 2020, was sent to Defendant Dallas and other recipients. It references Plaintiff's request to be moved, although it appears to be framed as relaying Plaintiff's request made to another nurse, rather than either nurses' opinion. He has provided declarations from other inmate kidney dialysis patients indicating that they were placed in the SN-C Unit for disciplinary sentences, as opposed to Isolation, due to their medical status. Plaintiff has provided a 2019 grievance which indicates that, in a prior disciplinary sentence, he

---

[3] The Court notes that the ADC has a long-standing policy which prohibits inmates from physical possession of their medical records. The Court also notes evidence in the summary judgment record that Plaintiff experienced difficulty in gaining timely access to view his medical records. Defendants have stated they received a HIPAA release from Plaintiff and were in possession of copies of his medical records from WellPath, LLC, the contract medical provider for the ADC. (ECF No. 73 at 2). Finally, the Court notes that Defendants themselves acknowledge that Dr. Daniels' email is the "only medical evidence in the record." (ECF No. 60 at 8). Having established an ADC policy wherein inmates may not possess copies of their medical records, and having also admitted that Plaintiff was not provided with timely access to them, the ADC Defendants cannot now rely upon Plaintiff's inability to provide copies to the Court as a reason to dismiss this case.

[4] Plaintiff's allegations in his verified Complaint and other summary judgment evidence permit this inference.

was also placed in SN-C due to his medical status.[5]  Plaintiff's bed assignment history indicates Plaintiff was housed in SN-C for his five prior disciplinary confinements.  Plaintiff has also submitted multiple pieces of evidence concerning the temperatures in the summer of 2020, when he was housed in West Isolation, and alleges in both his verified Complaint and his subsequent filings with the Court that these temperatures posed a risk to his health.  The email from Dr. Daniel states that Plaintiff would be "better served" in SN-C because "the dermatitis flare caused by the heat could compromise his fistula."[6]

Defendants do not address whether Plaintiff received a pre-placement physical exam or the results of that exam.  Instead, Defendants rely upon responses to Plaintiff's grievances, the email by Dr. Daniel, and an affidavit from Jason Gray, ADC Grievance Coordinator in their Brief.  Plaintiff started filing these grievances after he was placed in West Isolation, and the final grievance appeal answers were dated approximately two months or more after Plaintiff was placed in Isolation.  According to Jason Gray's affidavit, he contacted Dr. Daniel concerning one of Plaintiff's grievances, and Dr. Daniel replied with an email.  (ECF No. 59-4 at 1-2).  Dr. Daniel's email was dated August 14, 2020, almost a month after Plaintiff was placed in West Isolation, but did indicate that Plaintiff's transfer to SN-C was not an emergency.  (ECF No. 59-4 at 3.)  None of these documents provide evidence as to what Defendants actually knew concerning Plaintiff's medical status at the time he was placed in West Isolation on July 15, 2020.

Defendants also argue that they were entitled to rely upon the advice or opinion of medical staff, but have provided no summary judgment evidence as to the content and context of that

---

[5] The Court acknowledges that there is some question as to whether this was a matter of medical necessity for him or a matter of convenience for medical staff.  However, Plaintiff has alleged in his verified Complaint that this grievance supports his position.

[6] The Court will infer that the fistula in question is an arteriovenous fistula, which is the access point for the kidney dialysis machine.  https://www.yalemedicine.org/conditions/preparing-dialysis-av-fistula.  (last accessed Jan. 19, 2023).

13

medical advice immediately prior to Plaintiff's placement in West Isolation. With the exception of the email from Dr. Daniels, Defendants have also provided no summary judgment evidence as to any medical advice or opinion for the duration of Plaintiff's stay in West Isolation.

Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, as the Court must, a material question of fact remains as to what Defendants knew concerning Plaintiff's medical status and how that status affected his placement in West Isolation immediately prior to and during that placement.

### B. Defendant Earl

Defendants also argue that Defendant Earl's only involvement with Plaintiff's claims was to review and respond to Plaintiff's grievances. (ECF No. 60 at 10-11). As such, they argue he cannot be held liable under the theory of *respondeat superior*. (*Id.*). A review of Plaintiff's verified Complaint, however, indicates he made essentially identical claims against all Defendants. Given the Court has only the aforementioned grievances and emails to rely upon in the summary judgment record, Defendants have failed to make a sufficient showing to support their summary judgment motion on this issue.

### IV. CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 59) be DENIED.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **24th day of January 2023**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

15