IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RONALD J. HAMILTON                                                                                              PLAINTIFF

v.                                              Case No. 6:21-cv-6016

SUPERINTENDENT
DEANGELO EARL, *et al*.                                                                                      DEFENDANTS

### MEMORANDUM OPINION

Before the Court is a Report and Recommendation ("R&R) issued by the Honorable Mark. E. Ford, United States Magistrate Judge for the Western District of Arkansas. ECF No. 120. Defendants filed a timely objection to the R&R. ECF No. 125. The Court finds the matter ripe for consideration.

### I. BACKGROUND[1]

This is a civil rights action arising from Plaintiff Ronald J. Hamilton's incarceration within the Arkansas Division of Correction ("ADU"). At all times relevant to this matter, Plaintiff was incarcerated within the ADU's Ouachita River Unit ("ORU"). Plaintiff suffered from kidney disease[2] and began receiving dialysis three days a week in 2018. On July 15, 2020, Plaintiff engaged in a physical altercation with a guard and incurred a disciplinary infraction. That same day, ORU staff placed Plaintiff into a cell in the isolation section of the facility to serve out his disciplinary period. The isolation section did not have its own climate control capacity. Plaintiff remained in isolation until August 27, 2020.

During his relocation to isolation, Plaintiff began submitting a series of grievances asserting that he should not be placed in isolation because of his status as a dialysis patient.

---

[1] The factual background is taken from the undisputed facts accepted by the parties.
[2] Plaintiff referred to his specific condition as "IGA neuropathy." ECF No. 119, p. 10-11. No party disputes that Plaintiff had both kidneys removed in 2021.

Plaintiff filed his first grievance, OR-20-00820 ("Grievance #1"), on July 19, 2020, arguing that his status as a dialysis patient should preclude him from being housed in isolation. ECF No. 7, p. 14. Plaintiff contended that his health status meant he needed to be housed in a certain Special Needs 2 section ("SN-C") of the facility. Defendant Warden DeAngelo Earl ("Earl") denied Grievance #1 on July 27, 2020, stating that there were no medical restrictions or scripts that precluded Plaintiff being housed in isolation and that previous instances of him being housed in SN-C were out of convenience. Plaintiff appealed this denial, arguing that an ORU response a grievance that he submitted the prior year, SNN19-00181 (ECF No. 7, p. 26 ("2019 Grievance")), informed him that he was supposed to only be housed in a special needs section.[3] This appeal was denied on September 14, 2020, with the decision determining that the 2019 Grievance did not show that Plaintiff's health status required him to be in a special needs unit and that the appeal was functionally moot because Plaintiff was now in SN-C.

Plaintiff submitted his second grievance, OR-20-00874 ("Grievance #2"), on July 25, 2020. ECF No. 7, p. 28. Grievance #2 reiterated his argument regarding the 2019 Grievance, asserting that his medical condition prevented him from being in isolation. Plaintiff further stated that he informed Major Warner of his situation, and that Major Warner was waiting on an e-mail from other staff directing him to move Plaintiff out of isolation. Grievance #2 was rejected on the grounds that it was a duplicate of Grievance #1. Plaintiff's appeal of this rejection was denied on September 21, 2020, with the denial again determining that the 2019 Grievance did not support Plaintiff's assertion and that the matter was moot because of Plaintiff's move to SN-C.

Plaintiff submitted his third grievance, OR-20-00941 ("Grievance #3"), on August 11, 2020. ECF No. 7, p. 29. Grievance #3 argued that the high heat of isolation was incompatible

---

[3] Plaintiff appealed the rejection of his 2019 grievance, and the denial of his appeal stated that "You were assigned to SN-C barrack instead of isolation due to your medical needs, which could be addressed easier in SN-C barracks."

with Plaintiff's status as a dialysis patient. This grievance argued that the limited amount of fluid he could intake between dialysis treatments was being expelled due to the heat and that it was resulting in adverse health impacts. The grievance further asserted that the dialysis charge nurse informed Defendant Captain Bryant Dallas ("Dallas") that Plaintiff needed to be moved out of isolation because of his health status. Defendant Earl rejected this grievance on August 27, 2020, noting that personnel consulted Dr. Thomas Daniel on August 14, 2020, and that Dr. Daniels did not believe Plaintiff's situation was an emergency requiring that he be moved out of isolation. Plaintiff appealed this rejection, arguing that Dr. Daniel's opinion also noted that he would be better served with a move from isolation to SN-C. That appeal was rejected on October 12, 2020, noting that relocation to isolation sections was typical for disciplinary violations and that Plaintiff had already been relocated to SN-C.

Plaintiff submitted his fourth grievance, OR-20-00973 ("Grievance #4"), on August 14, 2020. ECF No. 59-5. Grievance #4 argued that "dialysis manager Fran and medical manager McCoy" had sent an email informing staff that Plaintiff needed to be moved to SN-C because of his health issues. Plaintiff asserted that Maurice Culclager and Defendant Dallas were aware of this need and were deliberately ignoring the situation. Defendant Earl rejected this grievance on August 26, 2020, stating that Maurice Culclager and Defendant Dallas have no say on Plaintiff's housing assignment and that McCoy had been consulted and stated there is no reason Plaintiff needed to be moved. Plaintiff appealed this rejection, asserting that health staff had sent an email stating he needed to be moved and citing Dr. Daniel's opinion that he would be better served in SN-C. This appeal was denied on October 8, 2020, with the denial noting that Plaintiff was now in SN-C and the issue was moot.

Plaintiff submitted his fifth grievance, OR-20-00994 ("Grievance #5"), on August 22, 2020. ECF No. 59-6. Grievance #5 argued that ADC regulations required that he be evaluated by medical personnel prior to being placed in isolation and that medical personnel have emailed security staff informing them of his need to be moved out of isolation. Defendant Earl rejected this grievance on August 26, 2020, stating that medical staff had been consulted and that no relocation was necessary at this time. Plaintiff appealed the rejection, stating that dialysis nurse Fran, Dr. Daniel, and medical manager McCoy had sent an email asserting that Plaintiff needed to be moved to SN-C. This appeal was denied on October 8, 2020, with the denial stating that the matter was now moot because of Plaintiff's relocation to SN-C.

Plaintiff submitted his final grievance, SNN20-00252 ("Grievance #6"), on August 23, 2020. ECF No. 7, p. 30. Grievance #6 argued that security staff, including Defendant Deputy Warden Todd Bell ("Bell"), were deliberately ignoring his health issues and keeping him in isolation despite being informed that Plaintiff should be moved to SN-C. This grievance was rejected for being considered a duplicate of Grievance #5. Plaintiff appealed this rejection, contending that it was distinct and more detailed than Grievance #5. Plaintiff's appeal was denied on October 16, 2020, with the denial finding that the matter was moot because Plaintiff was now in SN-C.

Plaintiff filed his initial pro se Complaint in this matter on January 29, 2021. ECF No. 1. Upon an order by the Court, Plaintiff filed his Amended Complaint on February 22, 2021, which is the operative complaint in this matter. ECF No. 7. Plaintiff brings a single claim against Defendants Earl, Bell, and Dallas pursuant to 42 U.S.C. § 1983.[4] Plaintiff broadly alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by

---

[4] Plaintiff also named Maurice Culclager as a Defendant. Plaintiff later filed a motion to voluntarily dismiss Defendant Culclager (ECF No. 70), which the Court granted (ECF No. 82).

4

keeping him in the high heat of isolation despite knowing that it posed a significant health risk to Plaintiff. *Id*. at p. 4-8. Plaintiff asserts that Defendants demonstrated "deliberate indifference to the Defendants' obligation to respond reasonably." *Id*. at p. 5. Plaintiff alleges that his prolonged exposure to heat caused significant skin rashes, muscle cramps, and "possible nerve damage due to his kidney disease." *Id*. at p. 4-8. Plaintiff proceeds against Defendants in their individual capacities.[5]

Defendants filed their first Motion for Summary Judgment on March 7, 2022, generally arguing that Plaintiff could not present factual support for his claims. ECF No. 59. On January 1, 2023, United States Magistrate Judge Barry A. Bryant issued an R&R recommending denial of that motion. ECF No. 84. Judge Bryant determined that the record was inadequately developed because of Plaintiff's difficulty in accessing relevant discovery materials, such as his medical files. The Court adopted the R&R, agreeing with Judge Bryant that the record was wholly undeveloped and that Defendants could not prevail because of difficulties Defendants created for Plaintiff during discovery.[6] ECF No. 88. The Court referred the matter to Judge Ford[7] to oversee the reopening of discovery and eventual resubmission of dispositive motions. *Id*. On April 21, 2023, Judge Ford appointed attorney Matthew Bender as counsel for Plaintiff.[8] ECF No. 90.

On December 28, 2023, Defendants filed their renewed Motion for Summary Judgment, along with a brief in support and statement of undisputed facts. ECF Nos. 103, 104, & 105.[9] Defendants generally argue that they are entitled to qualified immunity because the record cannot

---

[5] Though Plaintiff also asserted that he was proceeding against Defendants in their official capacities, the Court dismissed the official capacity claims for failure to sufficiently state such a claim. ECF No. 25.
[6] These discovery issues are discussed in more detail within Judge Bryant's R&R (ECF No. 84) and the Court's order adopting it (ECF No. 88).
[7] This matter was reassigned to Judge Ford from Judge Bryant on March 20, 2023.
[8] Attorney Jacob A. Worlow later entered an appearance on behalf of Plaintiff as well. ECF No. 110.
[9] Defendants also submitted a supplemental filing of sealed exhibits that contained confidential information. ECF No. 106.

support Plaintiff's Eighth Amendment claim and because the Eighth Amendment right asserted by Plaintiff was not clearly established at the time of the relevant conduct. Plaintiff responded in opposition, arguing that the factual record supports Plaintiff's claim and that his asserted Eighth Amendment right was clearly established at the relevant time. ECF No. 114. On June 17, 2024, Judge Ford issued the instant R&R, which recommended that Defendant's motion for summary judgment be denied because the Eighth Amendment right asserted by Plaintiff was clearly established and the record was adequate to establish Plaintiff's claim. ECF No. 120. Defendant filed a timely objection to the R&R, arguing that the record cannot support Plaintiff's claim and that Judge Ford analyzed the clearly established aspect of qualified immunity too broadly. ECF No. 125.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047-48 (8th Cir. 2022) (citation omitted). "A fact is 'material' if it may 'affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the

absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The party opposing summary judgment cannot rest on mere assertions or denials, but "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Banks v. Deere*, 829 F.3d 661, 665 (8th Cir. 2016) (citation omitted). The Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). It is the function of the jury, not the Court, to make credibility determinations, weigh evidence, and draw inferences from the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**B. Qualified Immunity**

Title 42 U.S.C. § 1983 directs that persons acting under color of law who deprive individuals of their rights under the United States Constitution shall be liable to the injured party. 42 U.S.C. § 1983. "In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Arnold v. McClinton*, 2024 WL 3808735 at *2 (8th Cir. 2024) (quotation omitted). "Even if a complaint fairly alleges a violation of a constitutional right, an official is nevertheless entitled to qualified immunity if that right was not clearly established at the time of the violation." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016). "Qualified immunity is an immunity from suit, not a mere defense to liability." *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017).

7

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quotation omitted). Though qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quotation omitted). Courts should not define clearly established law with generality and must examine the asserted right in light of the specific conduct alleged. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citations omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quotation omitted) (brackets in original). Courts may choose to analyze the clearly established prong of qualified immunity prior to determining if a plaintiff established a claim for violation of their constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 233-35 (2009). The plaintiff has the burden of demonstrating that the asserted right was clearly established at the time of the alleged conduct. *See Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (citations omitted). A plaintiff can meet this burden by citing "binding precedent" in the applicable jurisdiction or "a robust consensus of authority from other circuits." *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021).

**C. Review of Magistrate Judge's R&R**

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1). Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* Local Rule 72.2(VII)(C). After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or

8

modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger de novo review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Court may, in its discretion, conduct a de novo review of any issue in a report and recommendation. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Non-specific objections may require "full de novo review" if the record is concise. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

Defendants' objections to Judge Ford's R&R are sufficiently specific to require the Court to conduct a de novo review of the R&R.

### III. DISCUSSION

The Court first notes that the exact nature of Plaintiff's Eighth Amendment claim is uncertain. Plaintiff's Amended Complaint defines his claim against each Defendant as "Type of claim: Eight[sic] Amendment clause of cruel and unusual punishment. (showing deliberate indifference to the Defendant's obligation to respond reasonably)". ECF No. 7, p. 4-8. In the context of his factual allegations, Plaintiff could be asserting a claim regarding unconstitutionally dangerous conditions of confinement, *see, e.g. Farmer v. Brennan*, 511 U.S. 825 (1994), or a claim regarding unconstitutional denial of medical care, *see, e.g., Washington v. Denney*, 900 F.3d 549 (8th Cir. 2018). Defendants' motion for summary judgment addresses both possibilities. Plaintiff's response focuses on denial of medical care. Judge Ford's R&R analyzes Plaintiff's

9

claim as one focused on conditions of confinement. The Court will analyze Defendants' motion and the record under each of the two potential theories of liability.

### A. Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id*. at 832-33 (quotations and citations omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828 (citations omitted).

To establish a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment, an inmate "must make two showings—one objective and one subjective[.]" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). The objective prong requires showing a "sufficiently serious" deprivation of humane conditions and that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (quoting *Farmer*, 511 U.S. at 834). The subjective prong requires showing that the prison official possessed the requisite state of mind, which is "deliberate indifference" to the substantial risk to an inmate's health or safety. *Id*. (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference is beyond mere negligence and is more akin to criminal recklessness. *See Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (citations omitted). "An official is deliberately indifferent if he or she actually knows of the substantial risk

10

and fails to respond reasonably to it[.]" *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). "The question of whether the official knew of the substantial risk is a factual one 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Id*. (quotation omitted).

Defendants argue that Plaintiff cannot establish either of the two prongs required for a conditions of confinement claim. ECF No. 104, p. 7-10. Defendants first contend that Plaintiff's allegations regarding the temperatures in isolation concern an issue of mere comfort and do not indicate a deprivation of something essential to civilized existence. Defendants also contend that there is inadequate evidence to establish that they were deliberately indifferent to Plaintiff's conditions. They emphasize that Plaintiff's medical records show that Plaintiff was not subject to heat restrictions at that time and that ADC personnel installed portable AC units in the isolation sections for the summer months of 2020. Defendants also argue that it was not clearly established at the relevant time that the conditions allegedly experienced by Plaintiff violated the Eighth Amendment. Defendants note that all cases cited by Plaintiff finding that exposure to excessive heat can violate the Eighth Amendment are from the Fifth or Eleventh Circuit and involve mismatched standards applied to different factual circumstances.

Plaintiff does not directly address this aspect of Defendant's motion for summary judgment. As noted above, Plaintiff's response exclusively frames and analyze Plaintiff's claim as one for denial of medical care. In the context of the undisputed facts and Plaintiff's arguments regarding denial of medical care, Plaintiff would likely support this claim by contending that the combination of the high summer temperatures, the lack of climate control in isolation, and his medical issue made the conditions of his confinement in isolation deleterious to his health and that Defendants were indifferent to that risk.

11

In his R&R, Judge Ford recommends denying Defendants' motion because the record indicates that there are genuine factual questions as to whether Plaintiff was subject to a serious risk of harm and whether Defendants were deliberately indifferent to any such risk. ECF No. 120, p. 17-21. Judge Ford points to Plaintiff's kidney disease, his corresponding fluid intake limitations, a fact sheet given to him by a dialysis nurse advising him to avoid high temperatures, the high summer temperatures during his time in isolation, and the lack of climate control in isolation as creating a genuine question as to whether Plaintiff was subject to conditions posing a serious risk of harm while in isolation. As to Defendants' alleged indifference to that risk, Judge Ford highlights that Plaintiff's five prior disciplinary confinements were served in a climate-controlled area, the signed declarations (ECF No. 45) from three other dialysis inmates stating that they never served disciplinary sentences in isolation because of their status as dialysis patients, the numerous grievances Plaintiff began filing shortly after being placed in isolation, alleged statements made and emails sent by dialysis nurses to Defendants about Plaintiff's need to be moved out of isolation, and Dr. Daniel's opinion that Plaintiff would be "better served" by a move to SN-C because of the heat. Judge Ford determines that this evidence demonstrates that there is a genuine question as to Defendants' actual knowledge of any serious risk to Plaintiff and their indifference to that risk. Judge Ford also recommends denying qualified immunity, specifically citing the Fifth Circuit's decision in *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) as indicating that it was clearly established at the relevant time that exposure to unsafe temperatures can violate the Eighth Amendment. Judge Ford also asserts that "[i]t is simply inconceivable that anyone living in Arkansas — or anywhere else in the American South — would be unaware of the obvious risk of harm posed by high heat and humidity to an inmate suffering from one or more serious medical conditions." ECF No. 120, p. 21.

Defendants' objection argues that the factual record does not support Judge Ford's recommendations. ECF No. 125. Defendants attach affidavits from ADC medical staff, such as Dr. Daniel and Nurse Crystal McCoy, which assert that they did not believe that Plaintiff's placement in isolation posed a risk to his health.[10] Defendants also point to the multiple medical examinations Plaintiff underwent during his time in isolation, either due to a grievance or for other reasons, as demonstrating that he was given consistent medical attention and that the healthcare providers did not believe it was medically necessary for Plaintiff to be moved out of isolation. Defendants also dispute that there is any causal connection between Plaintiff's time in isolation and the eventual removal of his kidneys. Defendants cite Plaintiff's medical records to contend that Plaintiff willingly did not comply with dialysis treatments 36 times in 2020, which should prevent any reasonable fact finder from concluding that his time in isolation contributed to any damage rather than Plaintiff's own consistent disregard for treatment. Defendants also assert that Judge Ford defined the clearly established right applicable to Plaintiff's claim with an impermissibly high level of generality.[11]

The Court finds that Defendants are entitled to qualified immunity for any conditions of confinement claim regarding Plaintiff's disciplinary stint in isolation. This finding is required by the Eighth Circuit's recent decision in *Cody v. City of St. Louis for and on behalf of Medium Security Institution*. 103 F.4th 523 (8th Cir. 2024). In *Cody*, the Eighth Circuit explicitly rejected a district court's determination that decisions from the Fifth Circuit created a clearly established Eighth Amendment right for inmates to be free from dangerously high temperatures in this circuit. *Id*. at 533 ("We do not agree with the district court that [*Yates v. Collier*, 868 F.3d 354 (5th Cir.

---

[10] The Court notes that these affidavits were not in the record prior to Judge Ford issuing his R&R.
[11] Defendants also cite to various past disciplinary infractions committed by Plaintiff, asserting that Plaintiff is generally undeserving of being viewed as a victim. The Court does not find that these past infractions are relevant to Plaintiff's claims.

13

2017)] established a clear rule within *our* circuit, and Plaintiffs point us to no other authorities on appeal.") (emphasis in original). Plaintiff relies entirely on Fifth Circuit precedent, specifically *Ball v. LeBlanc*, to assert that his right to be free from dangerously high temperatures was clearly established during his relevant time in isolation.[12] Between the Eighth Circuit's ruling in *Cody* and Plaintiff's failure to present a "robust consensus of authority" demonstrating that exposure to dangerous temperatures violates a clearly established right, the Court is required to find that Defendants are entitled to qualified immunity for this potential dimension of Plaintiff's Eighth Amendment claim.[13] *Graham*, 5 F.4th at 887.

### B. Denial of Medical Care

"[T]he Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Luckert v. Dodge City*, 684 F.3d 808, 817 (8th Cir. 2012) (quotation omitted) (bracket in original). The objective prong of a claim for denial of medical care requires showing that "the inmate suffered from a sufficiently serious medical need[.]" *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id*. (quotation omitted). "A medical need that would be obvious to a layperson makes verifying medical evidence unnecessary." *Id*. (citation omitted).

The subjective prong requires showing that prison officials had knowledge of the serious medical need but deliberately disregarded that need. *Denney*, 900 F.3d at 559. Deliberate

---

[12] Notably, the court in *Yates* cites to *LeBlanc*, along with several other Fifth Circuit decisions, when reinforcing that the Fifth Circuit has "repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures[.]" 868 F.3d at 361.
[13] The Court notes that the Eighth Circuit issued its opinion in *Cody* on June 3, 2024, which was after the parties submitted their arguments and roughly two weeks prior to Judge Ford issuing the instant R&R. 103 F.4th 523.

indifference occurs when prison officials "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Id*. (quotation omitted) (emphasis in original). "Deliberate indifference is 'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Fourte v. Faulkner Cnty, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quotation omitted). Deliberate indifference can be shown though circumstantial evidence and inferences drawn from the obvious nature of the medical need and risks involved. *See Denney*, 900 F.3d at 559-60 (citation omitted). "An official's inadequate 'response to a risk may support an inference that the offic[ial] recognized the inappropriateness of his conduct.'" *Id*. at 560 (quotation omitted) (brackets in original). Both the objective and subjective prong of a claim for denial of medical care are questions of fact. *See VonWald*, 638 F.3d at 915.

Defendants argue that the record prevents Plaintiff from being able to establish that they acted with deliberate indifference to any serious medical need. ECF No. 107, p. 4-6. Defendants begrudgingly admit that "kidney damage is *probably* a serious medical condition", but dispute that a heat rash or muscle cramps are clearly serious medical conditions. *Id*. at p. 5 (emphasis added). More significantly, Defendants contend that there is no indication that they were either aware of or indifferent to any risk to Plaintiff during his time in isolation. Defendants highlight that there was no heat restriction in Plaintiff's personal medical file that would inform them that Plaintiff's placement in isolation could put his health at serious risk. Defendants also note that the first instance Plaintiff specifically cited the heat in isolation as an issue was in Grievance #3 on August 11, 2020, and that Defendants requested Dr. Daniel's input on the matter in response. Defendants emphasize that Dr. Daniel opined that Plaintiff's placement in isolation was not an emergency requiring relocation. Defendants further note that Plaintiff received all scheduled dialysis

15

treatments during his stint in isolation and was given multiple medications aimed at resolving his rash. Defendants also dispute that Plaintiff's time in isolation caused any kidney damage and assert that it was the only period during 2020 in which Plaintiff completely adhered to his dialysis treatment schedule. Therefore, Defendants assert that no reasonable fact finder could conclude that they knew of a significant medical need, deliberately ignored such a need, or that they caused Plaintiff any damage. Defendants also passingly state that the right asserted by Plaintiff for this claim was not clearly established but offer no further analysis apart from reciting basic qualified immunity principles.

In response, Plaintiff argues that there is a genuine question of fact regarding Defendant's knowledge of Plaintiff's medical needs, the adequacy of Defendants' response to those needs, and the damages that resulted from Defendants' indifference. ECF No. 114, p. 9-13. Plaintiff contends that his status as a dialysis patient with failing kidneys is an obviously serious medical need. As evidence that he was at significant risk, Plaintiff points to a medical fact sheet given to him prior to his placement in isolation advising dialysis patients to avoid extreme temperatures and Dr. Daniel's opinion that Plaintiff would be "better served" in SN-C because of the heat in isolation. Plaintiff disputes that the lack of an official medical restriction in his file for avoiding heat would prevent a layperson from understanding that his placement in isolation during high summer temperatures without climate control for nearly 45 days while under significant fluid intake restrictions for dialysis would constitute a serious risk to his health. Plaintiff then contends that Defendants were obviously aware of Plaintiff's condition because of his nearly two-year long history of receiving dialysis treatments, his multiple grievances and complaints to ADU staff, and from his witnessing dialysis nurses informing Defendant Dallas that Plaintiff should be moved out

of isolation.[14]  Plaintiff contends that this span of time in isolation clearly caused harm because he ultimately needed to have both kidneys removed.

Plaintiff also contends that it was clearly established at the time that subjecting an inmate to extreme temperatures when they are medically vulnerable to those temperatures is an Eighth Amendment violation. *Id*. at p. 13-15.  Plaintiff cites the Fifth Circuit's opinion in *Ball v. LeBlanc* to demonstrate that it is clearly established that prolonged exposure to dangerously high temperatures violates an inmate's Eighth Amendment rights.  Plaintiff asserts that the Eighth Circuit has reached similar conclusions regarding cold temperatures but does not provide any specific citations.  Plaintiff also states that the risk in this instance was so obvious that the Court can find that there does not need to be controlling precedent before holding that Plaintiff's asserted right was clearly established.

As noted above, Judge Ford's R&R analyzed Plaintiff's claim as one regarding conditions of confinement and not one for denial of medical care.  The Court will take note of the factual matters emphasized by Judge Ford.  Also, Defendants' objections, as detailed above, seem equally applicable to this potential dimension of Plaintiff's Eighth Amendment claim.

The Court finds that Plaintiff has failed to establish that Defendants were deliberately indifferent to any objectively serious medical need.  The Court first notes that it does not consider Plaintiff's mere placement in isolation as a distinct medical issue.  Viewing Plaintiff's placement in isolation as creating a standalone medical need would clumsily convert the conditions of confinement claim, which focused on the threat posed by the combination of heat and his medical issues, into a claim for denial of medical care.  Thus, Plaintiff's potential denial of medical care

---

[14] Plaintiff also maintains that two dialysis nurses in the Ouachita River Unit, Fran and Raquel, sent an email to Defendant Dallas informing him that Plaintiff needed to be moved out of isolation because of his medical condition. ECF No. 114, p.6 n4.  Plaintiff states that this email has not been produced in discovery.

claim will be analyzed regarding the distinct medical issues alleged in his complaint, which include heat rash, cramps, and nerve damage from his kidney issues.

First, the record is devoid of any indication that Plaintiff complained of or was suffering nerve damage. It is not mentioned in any grievance or the contemporaneous medical records made during Plaintiff's time in isolation, and Plaintiff has not presented any evidence demonstrating he suffered nerve damage as a result of his disciplinary stint. If Plaintiff's claim is more accurately characterized as alleging that he did not receive appropriate treatment for his kidney condition, it is undisputed that Plaintiff's dialysis treatment continued uninterrupted during the relevant period in isolation.[15] As to Plaintiff's rash, medical records indicate that he received two different topical treatments from medical staff meant to alleviate the issue.[16] Plaintiff offers no evidence as to why this treatment was unreasonable other than broadly asserting that he should not have been in isolation in the first place. This forecloses any finding of indifference by Defendants regarding Plaintiff's rash issues. *See Fourte*, 746 F.3d at 387 (noting that disagreement with a certain course of treatment does not create a constitutional violation).

Lastly, even if Plaintiff's muscle cramps can be considered an objectively serious medical need, there is no indication in the record of deliberate indifference by Defendants. Plaintiff's first documented mention of muscle cramps is in Grievance #3 filed on August 11, 2020. ECF No. 7, p. 29. Plaintiff subsequently visited Dr. Daniel on August 14, 2020, and relayed his complaints about cramping. ECF No. 106-4, p. 104-105. Dr. Daniel's notes of the visit included his observation that Plaintiff "dialyzed for his entire 3.5 hours and had no episodes of cramping during that time." *Id*. at pp. 104, 106. Dr. Daniel's notes regarding Plaintiff's continuing treatment do

---

[15] Plaintiff stated in his deposition that he made all scheduled dialysis appointments. ECF No. 119, p. 24.
[16] Notes from a July 22, 2022 medical encounter notes that staff provided Plaintiff with hydrocortisone cream for the rash. ECF No. 106-6, p. 308-09. During a later visit with Dr. Daniel on August 14, 2020, Dr. Daniel prescribed "Triamcinolone Acetonide" ointment for Plaintiff's skin "dermatitis". ECF No. 106-4, p. 106.

not demand relocation and do not mention or recommend any treatment for cramps. *Id*. at p. 105-107. Plaintiff's subsequent grievances do not mention muscle cramps. Plaintiff also filled out an "ADC Health Service Request Form" on August 11, 2020, that complained of cramping. ECF No. 106-6, p. 252. The treating medical staff noted that Plaintiff informed them he "just wants it documented that he put in a sick call" and that the treatment plan is that "inmate will remain in isolation at this time." *Id*. This record cannot permit a finding that Defendants were deliberately indifferent to Plaintiff's cramps because medical personnel took note of Plaintiff's complaints and, upon observation and discussion, did not find that any course of treatment was necessary. Defendants' reliance on such medical assessments is a far cry from the "criminal-law recklessness" mindset that must be present for Plaintiff's claim. *VonWald*, 638 F.3d at 914-15 (quotation omitted).

Accordingly, Plaintiff has failed to establish an Eighth Amendment claim related to denial of medical care during his disciplinary stint in isolation. Therefore, Defendants are entitled to qualified immunity for this potential Eighth Amendment claim. *McClinton*, 2024 WL 3808735 at *2.

### IV. CONCLUSION

For the reasons stated above, the Court **declines** to adopt Judge Ford's R&R. ECF No. 120. Defendants' Motion for Summary Judgment (ECF No. 103) is hereby **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue.

**IT IS SO ORDERED**, this 28th day of August, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge